OPINION
Appellant Kevin M. Kearns appeals the decision of the Mansfield Municipal Court, Richland County, which denied his motion to suppress evidence and subsequently found him guilty on two misdemeanor drug-related offenses and a traffic charge. The relevant facts leading to this appeal are as follows.
On the night of November 16, 1999, Trooper Christopher Wood of the Ohio State Highway Patrol was traveling southbound on Interstate 71 in Richland County, Ohio, and came upon a 1990 Dodge Spirit being driven by appellant in the right-hand southbound lane. Trooper Wood followed appellant for a short time. During this period, Trooper Wood observed the passenger-side tires of appellant's vehicle cross the painted right-side edge line of the highway by approximately six to eight inches, "about three times within approximately one mile." Tr. at 7. Based on these observations, the trooper effectuated a traffic stop.
Trooper Wood exited his cruiser and approached the passenger window of appellant's Dodge. He asked for appellant's license, registration, and insurance card, which appellant provided without incident. Trooper Wood observed that appellant had glassy and bloodshot eyes, and noticed what appeared to be a bag of nut mixture on the seat between appellant's legs. He asked appellant if he was tired, or if perhaps he had been eating and not paying attention to the road. Appellant replied that he was not tired and stated he was not aware of having traveled over the roadway line. Trooper Wood observed a blanket lying across the rear seat on the passenger side and asked if appellant would lift it up. In response thereto, appellant reached back over his seat and almost instantaneously lifted the blanket and placed it back. Trooper Wood, during that moment, saw under the blanket "* * * a black item, or something that appeared to be black * * *." Tr. at 10. Appellant was asked again by the trooper to lift the blanket, but he declined to do so.
Trooper Wood then requested that appellant exit the Dodge. The two men proceeded to a point behind the Dodge and in front of the police cruiser. Appellant wore a denim jacket which appeared to the officer to have a bulge in the lower portion. Trooper Wood advised appellant that he wanted him to take a seat in the cruiser, but that prior thereto he would want permission to conduct a pat-down search. Appellant refused to consent to such a search, even though the trooper made two additional requests as they briefly stood along the highway.
Trooper Wood at that point directed appellant back to his vehicle, the Dodge, and returned to the cruiser to run appellant's Vermont license through a record check and to call for back-up. From said vantage point, he observed appellant "reaching down or doing a lot of moving within the vehicle." Tr. at 15.
A few minutes thereafter, another state trooper and a canine unit from the sheriff's department arrived at the scene. The troopers again asked appellant to step out of his vehicle and conducted a pat-down search despite appellant's refusal to consent. As a result of the pat-down, the troopers discovered a pocket knife, a marihuana pipe, and a small baggy of marihuana.
Appellant was charged with failure to maintain lane of travel (R.C.4511.33(A)), possession of marihuana (R.C. 2925.11), and possession of drug paraphernalia (R.C. 2925.14). On October 4, 2000, the trial court overruled appellant's motion to suppress the evidence obtained as a result of the stop and/or search. Appellant thereafter granted his trial counsel the authority to enter pleas of no contest. The trial court thereupon found appellant guilty on all three charges and sentenced him accordingly, including a suspended jail term of thirty days on the drug paraphernalia count.
On January 18, 2001, appellant filed his notice of appeal, and herein raises the following three Assignments of Error:
 I. THE TRIAL COURT ERRED AS A MATTER OF LAW BY OVERRULING DEFENDANT-APPELLANT'S MOTION TO SUPPRESS ON THE GROUNDS THAT THE STOPPING OF DEFENDANT-APPELLANT'S MOTOR VEHICLE BY LAW ENFORCEMENT AUTHORITIES WAS AN UNCONSTITUTIONAL STOP AND SEIZURE, UNSUPPORTED BY REASONABLE SUSPICION OR PROBABLE CAUSE.
 II. THE FINDING OF THE TRIAL COURT THAT DEFENDANT-APPELLANT WAS GUILTY OF A VIOLATION OF R.C. 4511.33(A) WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 III. THE TRIAL COURT ERRED AS A MATTER OF LAW BY OVERRULING DEFENDANT-APPELLANT'S MOTION TO SUPPRESS ON THE GROUNDS THAT THE NON-CONSENSUAL SEARCH OF DEFENDANT-APPELLANT'S PERSON WAS AN UNCONSTITUTIONAL SEARCH, UNSUPPORTED BY REASONABLE SUSPICION OR PROBABLE CAUSE.
 I
In his First Assignment of Error, appellant argues that the trooper's initial traffic stop was an unconstitutional search and seizure under the facts presented, and that the trial court therefore erred in denying the motion to suppress. We disagree.
There are three methods of challenging, on appeal, a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. See State v. Fanning
(1982), 1 Ohio St.3d 19; State v. Klein (1991), 73 Ohio App.3d 486; Statev. Guysinger (1993), 86 Ohio App.3d 592. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See State v. Williams
(1993), 86 Ohio App.3d 37. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994), 95 Ohio App.3d 93; State v.Claytor (1993), 85 Ohio App.3d 623; Guysiner, supra. In the matter presently before us, we find appellant challenges the trial court's decision concerning the ultimate issue raised in his motion to suppress. Thus, in analyzing this Assignment of Error, we must independently determine whether the facts meet the appropriate legal standard.
Appellant thus argues that Trooper Wood did not have reasonable suspicion or probable cause to effectuate the initial stop. In State v.Lambert (August 20, 2001), Stark App. No. 2001CA00089, unreported, this Court addressed the same argument under nearly identical facts. In that case, a trooper "observed appellant cross the white line by a tire width and touch the white line two more times, all within a mile and a half distance." Id. at 2. Relying on Dayton v. Erickson (1996), 76 Ohio St.3d 3, and our analysis in State v. McCormick (Feb. 2, 2001), Stark App. No. 2000CA00204, unreported, we held that any traffic violation, even ade minimis violation, would form a sufficient basis upon which to stop a vehicle. We reiterated the following: "The severity of the violation is not the determining factor as to whether probable cause existed for the stop. State v. Weimaster (Dec. 21, 1999), Richland App. No. 99CA36, unreported. Rather, "`* * * [w]here an officer has an articulable reasonable suspicion or probable cause to stop a motorist for any criminal violation, including a minor traffic violation, the stop is constitutionally valid * * *'" Id. at 5, citing McCormick at 10, citingErickson at 11-12.
We herein apply a similar analysis and find there was sufficient reasonable, articulable suspicion of a violation of the marked lanes statute to justify a stop of the motor vehicle. Therefore, we find the trooper's stop of appellant's vehicle was constitutionally valid. The trial court did not commit an error of law when it denied appellant's motion to suppress in this regard.
Appellant's First Assignment of Error is overruled.
 II
Appellant maintains, in his Second Assignment of Error, the trial court's finding of guilt on the R.C. 4511.33(A) "marked lane" charge[1]
is against the manifest weight of the evidence.
The Ohio Supreme Court in State v. Thompkins (1997), 78 Ohio St.3d 380, has made clear that the legal concepts of sufficiency of the evidence and manifest weight of the evidence "are both quantitatively and qualitatively different." State v. Williams (August 24, 2001), Scioto App. No. 00CA2731, unreported, at 2, citing State v. Ricker (Sept. 30, 1997), Franklin App. No. 97APC01-96, unreported, (discussing Thompkins). Thus, an appellant is precluded from raising a manifest weight claim on appeal after entering a plea of no contest. See State v. Gronbach(July 1, 1999), Fairfield App. No. 98CA73, unreported, citing State v. Wells
(Feb. 16, 1999), Warren App. No. CA98-05-057, unreported, at 1. "By entering a plea of no contest, appellant has waived certain constitutional rights, including the right to have the state prove its case beyond a reasonable doubt." Id., citing State v. Hale (Nov. 15, 1993), Butler App. No. CA93-04-065, unreported, at 5, citing State v.Pernell (1976), 47 Ohio App.2d 261 . "The court can only weigh the evidence where the defendant has pled not guilty and evidence on both sides has been presented." Wells at 1, citing State v. McGhee (Jan. 18, 1995), Montgomery App. No. 14515, unreported, at 2.
Appellant's Second Assignment of Error is therefore overruled.
 III
In his Third Assignment of Error, appellant contends the trial court erred in denying his motion to suppress the results of the pat-down search conducted by the troopers prior to the placement of appellant in the police cruiser. We disagree.
In State v. Lozada (2001), 92 Ohio St.3d 74, the Ohio Supreme Court addressed the issue before us, holding as follows at paragraph one of the syllabus: "During a routine traffic stop, it is reasonable for an officer to search the driver for weapons before placing the driver in a patrol car, if placing the driver in the patrol car during the investigation prevents officers or the driver from being subjected to a dangerous condition and placing the driver in the patrol car is the least intrusive means to avoid the dangerous condition." The Court in Lozada
recognized that "`[a]lthough a police officer may reasonably pat down a person before he places him in the back of a police vehicle, the legitimacy of that procedure depends on the legitimacy of placing him in the police car in the first place.'" Id. at 76, quoting People v.Kinsella (1988), 139 A.D.2d 909, 911, 527 N.Y.S.2d 899, 901.
Appellant's arguments essentially mirror the language of Kinsella. Appellant properly notes that as part of a traffic stop, officers have the authority to order the driver to exit his vehicle. Pennsylvania v. Mimms
(1977), 434 U.S. 106. However, appellant argues that such a rule does not give officers a carte blanche authority to frisk every citizen stopped for a traffic citation. Appellant's Brief at 20. See State v. Evans
(1993), 67 Ohio St.3d 405, 409. Appellant questions: "Indeed, if Trooper Woods was truly concerned about his safety, why did he order appellant to get back in his car (where weapons might be hidden) when the justification for ordering a person out of his car under Mimms is `officer safety?'" Appellant's Brief at 23. Appellant thus maintains, in light of Lozada, no "dangerous condition" was present under the facts of the case sub judice to justify the trooper's decision to place appellant in the cruiser.[2]
We emphasize that in determining whether an officer's beliefs are reasonable, a court must consider the totality of the circumstances involved. State v. Bobo (1988), 37 Ohio St.3d 177, 180. Here, the trooper thought he saw a dark object under the blanket after appellant's barely responsive "display" of the seat underneath. After exiting the vehicle the first time, appellant, according to Trooper Wood, kept touching the chest area of his denim jacket as the trooper asked for permission to conduct a pat-down. Tr. at 12. Trooper Wood recalled that appellant's eye movements, during the conversation behind the Dodge, suggested what in his experience was a "flight-or-fight syndrome." Tr. at 13. Additionally, although we have previously opined that "[m]otorists need not remain motionless during a traffic stop in order to retain their Fourth Amendment rights," State v. Taylor (July 13, 1998), Stark App. No. 1997CA00321, unreported, at 5, another important factor for consideration in the totality of events was appellant's movement within his automobile after he returned, which resulted in the trooper "[becoming] even more concerned, because, again, I don't know what's in that vehicle." Tr. at 15.
Therefore, upon review, in light of Lozada, of the written transcript and the highway patrol's videotape of the entire event along the interstate roadside, we find that the state presented sufficient evidence of a dangerous condition during the traffic stop to justify placement of appellant in the cruiser and that said placement was the least intrusive means to avoid the dangerous condition, thus warranting the pat-down search.
Appellant's Third Assignment of Error is overruled.
JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Mansfield Municipal Court, Richland County, Ohio, is affirmed.
Costs to appellant.
Hon. Julie A. Edwards, P. J. Hon. William B. Hoffman, J. Hon. John W. Wise, J. concur.
[1] Revised Code 4511.33(A) states: "A vehicle . . . shall be driven, as nearly as is practicable entirely within a single lane or line of traffic and shall not be moved from such lane or line until the driver has first ascertained that such movement can be made with safety."
[2] Lozada was decided after the submission of the briefs in this matter. Appellant provided this Court with supplemental authority on August 13, 2001.